# Portsmouth Cotton Oil Ref. Corp. *v.* Madrid Cotton Oil Company.

### Assumpsit.

(Decided February 10, 1916. 71 South. 111.)

1. **Evidence; Telegrams; Admissibility.**—Where a defendant introduced over objection a telegram as evidence of the efforts of the broker to sell the oil to third persons, plaintiff was entitled to bring out all that was done in connection with the transaction by introducing the answer to the telegram the action being for defendant's breach of an agreement to sell cotton seed oil, the sale being made through the broker.

2. **Same; Materiality.**—Where the parties disagreed as to the price and the court allowed defendant to prove its broker's offer to sell to another party at a price in excess of the contract price as claimed by plaintiff, it was error to decline to allow plaintiff to rebut that by showing the answers received, and the date of similar offers.

[Portsmouth Cotton Oil Ref. Corp. v. Madrid Cotton Oil Company.]

3. **Brokers; Agency.**—A broker employed by defendant to sell cotton seed oil is the agent of the seller and not of one purchasing through the broker.

4. **Same; Occupation.**—A broker is an agent employed to make bargains and contracts between other persons in the course of trade, and, while ordinarily authorized to buy or sell a particular thing in specified quantities and at a limited price, secret instructions which conflict with apparent powers have no effect on the rights of third parties dealing with him in good faith.

5. **Appeal and Error; Harmless Error; Evidence.**—Where the evidence was subsequently received or the facts sought to be established thereby were conceded, the erroneous exclusion of the evidence is harmless.

6. **Charge of Court; Misleading.**—A judgment will not be reversed for the giving of charges which possess misleading tendencies, and might have been refused for that reason, especially where the adversary party could and should have asked counter charges explaining the same, and failed to do so.

APPEAL from Houston Circuit Court.

Heard before Hon. H. A. PEARCE.

Assumpsit by the Portsmouth Cotton Oil Refining Company against the Madrid Cotton Oil Company, for breach of contract to sell cotton seed oil. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

E. S. THIGPEN, for appellant. FARMER & FARMER, for appellee.

MAYFIELD, J.—Appellant claims to have purchased two tanks of cotton seed oil from appellee, through a commercial broker, one C. G. Hewitt, and that appellee failed and refused to deliver according to the contract; that appellant was forced to go into the market and purchase other oil, and hence sues to recover the difference between the contract price and the price which appellant was compelled to pay in the open market. The defense of appellee was that it never sold, or agreed to sell, the oil in question to appellant at the price and on the terms claimed by appellant, but that it did agree to sell to the broker at the price of 27 cents per gallon, and he declined to take the oil at the price agreed. This record shows beyond doubt that appellant did purchase, through Hewitt, and on the terms named, and that appellee declined to sell or ship on those terms, after demand by appellant; that the price of oil was higher, at the time for delivery, than it was at the time of the alleged sale by appellee

to appellant, and that the latter went into the market and purchased the oil at an advanced price over the alleged contract price. There is no doubt that Hewitt was a broker merchant, and that as such he was held out by the defendant to the plaintiff as its agent to sell its oil, and that as such agent he sold the oil to plaintiff,; and that defendant declined to be bound by the contract of sale made by its agent. This is shown by a telegram from defendant to Hewitt, of date October 24, 1914, which read as follows: "Offer tank of oil for immediate shipment. [Signed] Madrid Oil Co." Acting on this, and other undisputed authority from defendant, the broker ·did sell two tanks of oil, one for immediate delivery, and one for November delivery, at 26.55 cents per gallon. The real contention of defendant was that the agent was not authorized to sell except for 27 cents per gallon. Mr. Watford, defendant's general manager, who sent the telegram set out above, and who held telephonic communications with the broker, and conducted a correspondence with him about the sale, testified in part as follows: "That he knew that C. G. Hewitt was a broker in Montgomery; that he knew that Hewitt had made sales as a broker prior to that time for the Madrid Cotton Oil Company; that Hewitt had made sales under his direction to the Portsmouth Cotton Oil Refining Corporation prior to that time, as a broker; that the Madrid Cotton Oil Company had some oil that it wanted to sell; that he wired Hewitt for the purpose of getting a price on that oil; that he didn't know that Hewitt wasn't dealing in cotton seed oil; that he knew that Hewitt was a broker in cotton seed oil; that he sent a telegram to Hewitt on October 24th; that Hewitt did not tell him in the conversation over ·the telephone that he had sold the oil at $3.54 per 100 pounds, and that he didn't hear anything about any price per pound; that he didn't know that Hewitt was to sell the oil for the Madrid Cotton Oil Company, to some other person; that at the time he asked him for prices on oil, he expected that he would sell it to some other person; that he received a letter from Mr. Hewitt right after the 27th day of October, inclosing contracts, showing that the two tanks of oil had been sold to John Aspegren; that he retained those contracts; that he didn't answer that letter; that the letter that Hewitt wrote him told him that he had sold the oil for account of Madrid Cotton Oil Company at $3.54 per 1·00 pounds; that he re-

ceived another letter from Mr. Hewitt, dated the 2d day of November, inclosing copies of corrected contracts. Witness was shown the contracts and corrected contracts that had been introduced in evidence, and stated that the copies sent to Madrid Cotton Oil Co. were copies of those contracts. Witness stated that in that letter of November 2d, Mr. Hewitt sent copies of contracts, showing the sale of the oil that was made to the Portsmouth Cotton Oil Refining Corporation on account of Madrid Cotton Oil Company at $3.54 per 100 pounds, one tank to be shipped upon prompt forwarding of tank car, and the other tank for November shipment from mill; that he did not remember what date the letter, inclosing the corrected copies, was received; that he remembered the telegram that he sent to Mr. Hewitt about the tank car, but did not remember whether the letter, inclosing the corrected contracts, was received before he sent the telegram about the tank or not; that the Madrid Cotton Oil Company retained that letter and those contracts, and never returned them to S. G. Hewitt and never wrote C. G. Hewitt about that contract at all. Witness further testified that he received the letter from Hewitt, dated October 27th, inclosing the contracts of John Aspegren, and subsequently he received the letter, dated November 2d, inclosing corrected contracts of the Portsmouth Cotton Oil Refining Corporation, stating that he had sold this oil for the Madrid Cotton Oil Company, retained them and never said anything at all about them."

The plaintiff offered to prove by the broker, Hewitt, that after he received the telegram from defendant, as above set out, and before any telephonic or other communication had with defendant, he, the broker, did get prices from dealers in crude oil such as the defendant had offered for sale. The trial court sustained defendant's objection to this testimony, and plaintiff excepted. The plaintiff also offered to prove by this witness, Hewitt, that he had made other sales of oil for the defendant, as broker, and that witness did not represent any particular refining, or oil mill, in his sales of crude oil; but the court declined to allow this proof to be made. The plaintiff also offered to prove by this witness that after he had a telephonic communication with the general manager of defendant, as to the sale of the oil in question, and after reading the telegram above set out, the witness wired various buyers, to get bids on the oil; but the

court declined to allow this evidence to be introduced. The trial court then allowed the defendant to offer in evidence, over the plaintiff's objection, a copy of a telegram purporting to have been sent by Hewitt to an oil company of Cincinnati, Ohio, reading as follows: "The Proctor and Gamble Co., Cottol Oil Dept. Cincinnati, Ohio. Bought one Madrid Cold pressed immediate twenty eight Confirm. [Signed] C. G. Hewitt."

The plaintiff then offered to prove by the witness Hewitt who sent the telegram, that it was sent for the purpose of obtaining an offer from the Cincinnati company to purchase the oil. The plaintiff, also in this connection, offered to introduce the answer to this telegram, in which the oil company declined to purchase; but both offers were denied to the plaintiff, and it excepted. The plaintiff also offered to prove by this witness, after the defendant had introduced the copy of the telegram above set out, that witness sent other telegrams, relating to the particular oil, to other purchasers of crude oils, in order to obtain the best price, and in his endeavor to get 27 cents for the oil; and in this connection the plaintiff offered the telegrams claimed to have been so sent; but the court declined to allow the proof, and the plaintiff excepted.

(1) It is difficult to see how any of these telegrams sent by Hewitt to third parties were binding on this plaintiff, and some of them were probably not binding on the defendant. But, the defendant having introduced one of these telegrams sent out by Hewitt, which related to the sale of the oil in question to a third party, the answer to that telegram, declining to purchase, was certainly admissible. The defendant having thus, over the plaintiff's objection, brought out a part of Hewitt's efforts to sell the oil in question to third parties, the plaintiff was entitled to bring out all that was done in connection with the transaction in his efforts to sell the oil to third parties. The defendant could not select one of these matters, a mere part of a general transaction, and then not allow the plaintiff to prove all that was done in reference to such matter.

(2) The plaintiff first offered to prove the efforts of Hewitt to sell the oil to third parties, and the court declined to allow the proof, but later allowed defendant to prove his offer to sell to one party, and declined to allow plaintiff to rebut this by showing the answer received, and also his similar offers to other third parties. This was prejudicial error to reverse.

(3, 4) The trial court seems to have treated Hewitt as the agent of plaintiff, and not of the defendant. In this the trial court was in error. So far as this plaintiff is concerned, in connection with the sale in question, Hewitt was the agent of defendant, and as such agent sold the oil to plaintiff. The plaintiff did not engage him to buy the oil for it, but the defendant engaged Hewitt to sell the oil for it—not especially to this plaintiff, but to any one who would purchase it. It is true there is some evidence tending to show that defendant sold the oil directly to Hewitt; but there is no evidence to show that plaintiff purchased directly from Hewitt. But all the evidence shows that plaintiff only purchased through Hewitt as a broker and as defendant's agent in selling the oil. There can be no doubt that Hewitt was authorized by the defendant to sell the oil in question, and that he did sell it to the plaintiff. There is nothing in this record to show, or to even put plaintiff on notice, that Hewitt was acting in bad faith to his principal, or was even violating any instructions given him by his principal.

We are of the opinion that the record shows conclusively that Hewitt was a commercial broker, and was so known to both the plaintiff and the defendant, and that defendant authorized him, as such broker, to sell for it the oil in question. What was said in the case of *Stratford v. City Council of Montgomery*, 110 Ala. 619, 625, 20 South. 127, 128, defining a commercial broker, is accurate and apt: "A 'broker' is defined as 'an agent employed to make bargains and contracts between other persons in matters of trade, commerce, or navigation for a compensation commonly called "brokerage." '—Story on Agency (8th Ed.) § 28. Every broker is, in a sense, an agent, but every agent is not a broker. There are, however, so many incidents common to both relations that it is difficult to define the precise line of demarcation."

Mr. Mechem, in his excellent work on Agency (volume 2 [2d Ed.] p. 1966, § 2397), has well stated the law as to the authority of commercial brokers to bind their principals: "A broker in the ordinary case is known to be an agent acting under a limited authority. He is usually authorized to buy or sell a particular thing in specified quantities and at a limited price. He is often described in the books as a special agent, and in order to bind his principal he must keep within the limits of the author-

ity conferred upon him. Secret or private instructions, as that term has heretofore been defined, which conflict with the usual or apparent powers will no more affect the rights of third persons who in good faith deal with the broker in ignorance of them than in the case of dealing with any other agent, though their violation may make the broker liable to his principal."

On the subject of the broker's authority to fix the price, the same author (Id. § 2401) proceeds to say: "A broker, who is instructed to buy or sell property, with no limitations as to the price, would have implied authority to agree upon the price and to bind his principal by such agreement, where the broker acts honestly and in good faith, and the price fixed is the usual one, or, where there is no usual price, then a fair and reasonable, and not an extraordinary, one. If there is a market price, that price should govern in the absence of anything indicating a contrary intent on the part of the principal."

While a broker sometimes represents both parties as to certain matters, and is sometimes spoken of as the agent of both parties, he is not always ex vi termini agent for both; that he is such agent rests upon presumptions which may be rebutted by the attending facts and circumstances.—2 Pars. Contracts, 292. In Ruling Case Law (volume 4, p. 255), text, the rule is thus stated: "Ordinarily a broker does not act in a dual capacity as the representative of both sides to a negotiation, but only as the agent of the party who first employed him. Once a deal is concluded, however, the law permits him to act as the representative of both parties, if they assent thereto."

(5) Appellant, plaintiff below, complains of many adverse rulings as to the admission and the rejection of evidence. As to the errors of rejecting evidence offered by plaintiff touching the custom obtaining in such sales, and as to the meaning of certain terms and phrases used in the contracts of sale, such as, "immediate shipment," "November delivery," etc., it appears that many of these rulings were without injury, because the evidence thus declined was subsequently admitted, or because the facts sought to be proven thereby were proven without dispute or were conceded.

(6) The plaintiff also complains of the giving of several written charges at the request of the defendant. These charges each stated correct propositions of law as applied to actions like this,

[Massachusetts Mut. L. I. Co. v. Crenshaw.]

for breaches of contracts of sale. The charges, however, possessed misleading tendencies, and could have been refused for that reason; but we will not reverse in such cases if the opposing party could and should have corrected or prevented such misleading tendencies by countercharges, and this could and should have been done in this case.

As the judgment must be reversed for the errors pointed out, it is unnecessary to now pass upon the weight or the sufficiency of the evidence, raised only by the motion for a new trial.

Reversed and remanded.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.