145 So.2d 831

**T. J. (Tom) KING**

v.

Gus EARLEY.

6 Div. 785.

Supreme Court of Alabama.

Oct. 18, 1962.

———◇———

Wilson & Wilson, Jasper, for appellant.

Elliott & Jackson, Jasper, for appellee.

HARWOOD, Justice.

This is an appeal from the Circuit Court reforming the description of the area of land involved in a timber deed.

The appellant here, Mr. King, originally filed a bill seeking to make the description more definite, a dispute having arisen between Mr. King, the vendor, and Mr. Gus Earley the vendee named in the deed, as to whether the deed included the timber west of Buck Creek on the land owned by Mr. King.

By cross bill the appellee, Mr. Earley, admitted that the description in the deed was vague, uncertain and confused and was not accurate and sufficient to describe the timber which Mr. King intended to convey.

The description of the area on which the timber was sold appears in the deed as follows:

"Beginning at the main gate, down center road of said 40 line, then north to northeast corner then west to the Branch and open Field, then South to said Fence, then East to main gate. All of the saw timber on the right of the Road leading into the Tom King Residents. And that timber on the left side of the road leading from the Tom King Residents to the main Highway. Beginning at the main gate."

At the hearing below Mr. King testified that he owned the 180 acres in question, and that for several years Mr. Fulmer and Mr. Setliff began coming to his home in an effort to persuade him to sell the timber on his land.

Finally he told them he was willing to sell a portion of the timber and he showed the portion he was willing to sell, this being all of the timber east of Buck Creek in the stipulated quarter sections. Mr. King said he specifically told Fulmer and Setliff that the timber he was willing to sell was that located on the east side of Buck Creek.

Fulmer and Setliff testified that they had visited Mr. King over a number of years in reference to the sale of his timber. Finally in September 1959, Mr. King told them he had decided to sell some timber, and Mr. King walked with them and pointed out the area from which he was willing to sell the timber.

According to the testimony of both Setliff and Fulmer they walked down a road and Mr. King informed them he would sell at that time all the timber "from the road to the field." This would include certain pockets of timber on the west side of Buck Creek.

A few days afterward Setliff and Fulmer contacted Mr. Gus Earley who operated a lumber mill under the name of Earley Lumber Company, and informed Mr. Earley that Mr. King was willing to sell some timber, and took him to the site and pointed out the area from which they said Mr. King was willing to sell the timber.

In this connection we quote the following excerpt from the testimony of Mr. Fulmer:

"Q. You drew this deed up yourself, didn't you?

"A. Yes.

"Q. When you drew it up, were you working for Gus Earley?

"A. I was helping him get the timber.

"Q. How long had you been working for Gus Earley?

"A. I wasn't working for him."

Mr. Fulmer further testified that he did not want the timber but that Mr. Earley did, and that he told Mr. King that he was buying the timber for Gus Earley.

Mr. Gus early testified that about three years prior to the date of the timber deed, Mr. Setliff came to him and asked if he would want to buy Mr. King's timber, and he probably told Mr. Setliff that he would like to have it. Mr. Setliff asked him what he would give him to buy it and he told Setliff he would pay him $500.00 to buy the timber and sell it to him.

Three or four days before the deed was delivered to him Setliff and Fulmer told him they had bought Mr. King's timber provided he could give them $5,800.00 and pay them $500.00.

He went with Setliff and Fulmer and looked at the timber and then told them to offer $5,000.00 for it. They came back shortly and informed him "they had bought Mr. King's timber provided he could give them $5,800.00" that is "provided I could give Mr. King $5,800.00 and give them $500.00".

In this connection the record shows the following during the examination of Mr. Earley.

"Q. Did they tell you Mr. King had agreed to sell the timber to them, or that he had agreed to sell it to you if you would give him fifty-eight hundred dollars?

"A. I aint going to say which one, because I don't remember which way it went. I believe they said Mr. King had agreed to let them have it.

"Q. What did you tell them?

"A. I told them I would give fifty eight hundred dollars. I said, 'I'm going to buy it because probably it will give me a chance to buy the rest of Mr. King's timber.' "

Mr. Earley further maintained in other parts of his testimony that the agreement between him and Setliff and Fulmer was that they would buy the timber, and then sell the same to Mr. Earley.

The evidence is further undisputed that after Mr. Earley agreed to pay $5,800.00 to Setliff and Fulmer that Mr. Fulmer prepared the deed to the timber and carried it to Mr. King. Mr. King's daughter apparently read part of the deed to him and informed him she did not know the meaning of it, and thereupon Mr. King asked her to sign his name to the deed. The deed conveyed the timber to the Earley Lumber Company, and Fulmer and Setliff signed the deed as witnesses. Fulmer and Setliff and Mr. King then drove to the Earley Lumber Company. Mr. Fulmer took the deed in and presented it to Mr. Earley who examined it and said it was satisfactory. Mr. Earley then wrote out a check for $5,800.-00 to Mr. King and took it out to the automobile in which Mr. King was sitting. Thereafter he paid $500.00 to Setliff and Fulmer.

We have set out rather fully the details of the transaction insofar as the parties are concerned, for in our opinion the crucial question in this case is whether or not Setliff and Fulmer were brokers and agents for Mr. Earley, or whether they were independent buyers or independent contractors, which is the view apparently held by the court below.

Upon the conclusion of the hearing the court entered a decree, the pertinent parts of which are as follows:

"From the evidence it appears that all the negotiations leading up to the sale of the timber, and the execution of the timber deed, was between T. J. King, the complainant, and Fulmer and Setliff. The Court is of the opinion that the said Fulmer and Setliff, who contracted to buy the timber from the complainant, were not in any sense agents or employees of the respondent Gus Early or the Early Lumber Company; that there was never any contract or agreement between the complainant T. J. King and the respondent Gus Early, or any meeting of the minds as between them relative to the purchase of the timber, and that a determination of this case must be based on the actual content of the timber deed. While it is true that the deed was made direct to Early Lumber Company, and delivered by King to Early, it does not appear from the evidence that there was any joint enterprize or other agreement which would bind Early to any of the conditions of the agreement prior to the execution of the deed.

"The Court accepts as true all the contentions made by the complainant relative to his intent to sell, and also his contention relative to misrepresentation in the deed, and the Court is of the opinion that if the case was one between the complainant T. J. King and the parties Fulmer and Setliff the complainant would be entitled to the relief prayed for. The Court is of the further opinion, however, that even though the testimony of the complainant T. J. King is true, and would be effective as against Fulmer and Setliff, it does not justify a reformation of the deed as executed by King to Early.

"The court has reached the conclusion from the evidence that the branch referred to in the land description is Buck Creek, and that the open field referred to therein is the King field, immediately west of Buck Creek. It is true that there are other ditches in the land, and that there is a McCullar field in the northwest corner of this tract of land. The McCullar field has large trees growing on it, indicating that it has not been cultivated for a long period of time, while the King field appears to have been cultivated up until a recent date. The conclusion reached herein is based not only on the evidence presented in court, but on a personal inspection of the property by the court accompanied by the solicitors in the case.

"In reaching a decision in this case, the Court has taken into consideration of the fact that the complainant is advanced in years, and that he did not and perhaps could not read the deed, but the Court is satisfied that the deed was read to him, or that he had ample opportunity to have the deed read to him and to understand its contents. The Court is of the opinion that to hold for the complainant T. J. King under all the evidence would be holding in effect that no one can depend upon a deed properly executed."

It is to be noted that in the above decree the court concluded that Fulmer and Setliff "were not in any sense agents or employees of the respondent Gus Early or Early Lumber Company."

It is our conclusion that the able trial judge below herein inadvertently misapplied the governing legal principles to the facts disclosed by the evidence.

The evidence shows that Mr. King did not contact Setliff and Fulmer to sell his timber, but that they approached him. On the other hand, several years prior to the sale Mr. Earley had told Setliff and Fulmer that he would pay them $500.00 to buy the King timber.

Under these conditions Setliff and Fulmer cannot be considered as agents of King.

The question yet remains whether they were independent contractors or whether they were brokers employed by Mr. Earley, and therefore were agents of Mr. Earley.

Concerning "brokers" we find the following set forth in Portsmouth Cotton Oil Refining Co. v. Madrid Cotton Oil Company, 195 Ala. 256, 71 So. 111:

"* * * What was said in the case of Stratford v. City Council of Montgomery, 110 Ala. 619, 625, 20 South 127, 128, defining a commercial broker, is accurate and apt: 'A "broker" is defined as "an agent employed to make bargains and contracts between other persons in matters of trade, commerce, or navigation for a compensation commonly called 'brokerage.'" Story on Agency (8th Ed.) § 28. Every broker is, in a sense, an agent, but every agent is not a broker. There are, however, so many incidents common to both relations that it is difficult to define the precise line of demarcation.'"

"Mr. Mechem, in his excellent work on Agency (volume 2 [2d Ed.] p. 1966, § 2397), has well stated the law as to the authority of commercial brokers to bind their principals: 'A broker in the ordinary case is known to be an agent acting under a limited authority. He is usually authorized to buy or sell a particular thing in specified quantities and at a limited price. He is often described in the books as a special agent, and in order to bind his principal he must keep within the limits of the authority conferred upon him. Secret or private instructions, as that term has heretofore been defined, which conflict with the usual or apparent powers will no more affect the rights of third persons who in good faith deal with the broker in ignorance of them than in the case of dealing with any other agent, though their violation may make the broker liable to his principal.'"

And in Burgin v. Phillips, 272 Ala. 78, 128 So.2d 491, this court stated:

"A real estate broker cannot act as agent for both the buyer and the seller in the same transaction. To state the principle a little differently, a servant cannot serve two masters."

While pertaining to licensing of real estate brokers, a definition of a real estate broker is to be found in Sec. 311(3), Title 46, Code of Alabama 1940, where such broker is defined as including "any person who, for a fee, commission, or other valuable consideration, or who with the intention or expectation of receiving or collecting a fee, or commission, or other valuable consideration, * * * negotiates or attempts to negotiate any real estate transaction."

Agency is determined by the facts, and not by how the parties may characterize the relationship. Purnell v. City of Florence, 27 Ala.App. 516, 175 So. 417. If the facts establish the relationship of principal and agent, the intention of the parties is immaterial, and the character of the relation is not affected by an agreement between the parties that an agency does not exist, or that some other relation does exist. Minto v. Moore, 1 Ala.App. 556, 55 So. 542.

Fulmer, a witness for the appellee Earley, testified that he did not want the timber, but was buying it for Earley, and that he had informed King he was buying it for Earley.

Earley testified that some time before the date of the transaction he had probably told Fulmer and Setliff he would want to buy the King timber.

When informed by Fulmer and Setliff that the King timber could be bought, he went with them and inspected the timber and after the inspection he told Fulmer and Setliff to offer King $5,000.00 for it. Being informed by Fulmer and Setliff that King would not take less than $5,800.00, Earley stated, "I'll give him $5,800.00 and may be I can get some more of his timber later."

Fulmer prepared the timber deed. The Earley Lumber Company was named as vendee. Upon its execution by King, Ful-

mer and Setliff signed as witnesses. They of course would not have been competent as witnesses had they been the vendees in the deed.

The deed was then taken to Earley, who after examination, approved the deed as drawn. Earley then made out a check to Mr. King for the $5,800.00 purchase price, and himself delivered the check to Mr. King. Thereafter he paid Fulmer and Setliff $500.00 for their services.

All of the above is shown by undisputed evidence.

Mr. Earley testified that he had told Fulmer and Setliff to buy the timber and he would buy it from them. It is also argued that Fulmer and Setliff could have sold the timber to someone other than Earley. It is on this basis only that Fulmer and Setliff could be considered independent buyers or independent contractors.

This status is untenable in view of the facts, and legal principles governing.

■ A sale of standing timber is a sale of an interest in lands within the meaning of the statute of frauds. Miller v. Smith, 202 Ala. 449, 80 So. 833; Smith v. Thomas, 224 Ala. 41, 138 So. 542. Fulmer and Setliff obtained no writing or memorandum from King in reference to the timber. They therefore possessed no interest in it that they could convey to Earley or to anyone else. The sale was to Earley. Fulmer and Setliff received $500.00 for their services. This was not a part of the purchase price of the timber.

Earley, after examining the deed accepted its terms. The Earley Lumber Company was named as vendee, and King was paid the purchase price directly by Earley. He thereby ratified the acts of Fulmer and Setliff in acting as negotiators with King, the fruits of which he accepted and was for his benefit.

■ All of the above necessitates the conclusion that Fulmer and Setliff were brokers and agents for Earley, and the trial court's findings that they were in no wise agents of Earley was a misapplication of governing legal principles.

■ Where the trial court's findings rest on undisputed facts, or if the trial court takes an erroneous view of the law as applied to such facts, the favorable presumption attending the trial court's findings on disputed evidence does not apply. Henderson v. Henderson, 228 Ala. 438, 153 So. 646; Murphree v. Hanson, 197 Ala. 246, 72 So. 437; Turner v. Turner, 251 Ala. 295, 37 So.2d 186.

On the disputed evidence the court found the issues in favor of the appellant. The presumption of correctness of the court's findings attends these findings. However, the court stated: " * * * even though the testimony of the complainant T. J. King is true, and would be effective as against Fulmer and Setliff, it does not justify a reformation of the deed as executed by King to Earley."

Since the undisputed evidence, and the legal principles applicable thereto show that Fulmer and Setliff were agents of Earley, this conclusion is erroneous. Further, this erroneous conclusion as to Fulmer and Setliff's lack of agency being the basis of the court's decree in favor of Earley, it follows that the decree itself must be deemed erroneous.

Several of appellant's assignments of error, argued in appellant's brief, present the points above discussed

For the reasons above set forth, the decree is due to be reversed and remanded to the lower court for further consideration in view of the conclusions above reached by us.

Reversed and remanded.

LIVINGSTON, C. J., and SIMPSON and MERRILL, JJ., concur.