333 So.2d 780 (1976)
FIRST SOUTHERN FEDERAL SAVINGS AND LOAN ASSOCIATION OF MOBILE, a corporation
v.
William K. NICROSI.
SC 1520.
Supreme Court of Alabama.
May 28, 1976.
Rehearing Denied July 2, 1976.
*781 Robert B. Stewart, Joel F. Dubina, Montgomery, for appellants.
T. W. Thagard, Jr., and Charles S. Coody, Montgomery, for appellee.
MERRILL, Justice.
The plaintiff-appellee, William K. Nicrosi, filed suit against the appellant, First Southern Federal Savings and Loan Association, a Corporation [hereinafter "First Southern"]. His claim consisted of one counta demand of $48,500.00 for services he rendered to First Southern. Judgment was entered in favor of Nicrosi in the amount of $32,095.00. First Southern appeals. We affirm.
Nicrosi is a licensed real estate broker whose assistance was enlisted by General Deichelmann, Vice-President of First Southern. Nicrosi was to attempt to secure a new location for First Southern. On August 1, 1974, Nicrosi received a letter from Deichelmann authorizing him to help First Southern negotiate the purchase of the Greystone Hotel building, which was no longer used as a hotel. Prior to this, the record reveals that Nicrosi had negotiated with several companies on renovation estimates and had arranged for the property to be appraised; he had also made preliminary inquiries into the availability *782 of several other suitable pieces of property. (The appraised value of the Greystone was between $485,000.00 and $545,000.00.)
Nicrosi had no written contract with First Southern or Deichelmann, but there is no question that he was employed by First Southern to help find adequate quarters. He contacted John Neill, President of Union Bank & Trust Co. [hereinafter "Union Bank"], which owned the Greystone, to see if it was available for sale.
Subsequent to Nicrosi's visit to Neill, First Southern authorized Nicrosi to offer Union Bank $485,000.00 for the Greystone, on a cash basis. After deliberation, the Board of Directors of Union Bank authorized Neill to sell at a price of $503,055.12, ranging down to a floor of $485,000.00. Neill notified Nicrosi that the Bank would not accept an initial offer of $485,000.00, but would accept $503,500.00. (The bank was carrying the Greystone on its books for roughly that amount.)
Nicrosi asked Neill for two letters, one offering the building at a gross price of $530,000.00 and that Union Bank would pay Nicrosi's commission; the other stated that the Bank would pay a commission of $26,500.00. Nicrosi gave Deichelmann a copy of the first letter. First Southern refused to pay more than $485,000.00, and a cash sale was finally made at that price. Subsequently, Nicrosi billed First Southern for $29,100.00 as charges for his services.
In later negotiations between First Southern and Nicrosi regarding the latter's compensation, Nicrosi was offered $2,500.00 to $10,000.00 by First Southern. After refusing to accept offers made by First Southern, Nicrosi filed this suit demanding $48,500.00 as the reasonable value of his services. The court found for Nicrosi in the sum of $32,095.00. A motion for a new trial was overruled.
First Southern proffers two issues on appeal. First, it contends that the lower court entered judgment against the great weight and preponderance of the evidence. Second, it contends that the lower court erred in finding that during the course of Nicrosi's employment by First Southern that he had acted in good faith toward his employer.
In W. T. Ratliff Co. v. Purvis, 292 Ala. 171, 291 So.2d 289, certain principles are stated which are applicable here:
A verdict is presumed to be correct.
The refusal of the trial court to grant a new trial because of the insufficiency of the evidence strengthens the presumption that the verdict is correct.
Where, on appeal, the sufficiency of the evidence to support the verdict is at issue, only those tendencies of the evidence most favorable to the verdict are reviewed; and such inferences as the jury [or here, the court] was free to draw are indulged.
A motion for a new trial is properly overruled where there is credible evidence which justified the verdict.
A verdict will not be set aside because it is contrary to the mere preponderance of the evidence.
Here, the finding of the court was supported by credible and substantial evidence. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Ex parte Morris, 263 Ala. 664, 83 So.2d 717 (1955); Turner v. Ribicoff, 224 F.Supp. 284 (1963).
Some of the substantial evidence is listed. In the fall of 1973, First Southern hired Nicrosi, a licensed real estate broker, to secure "larger corporate quarters in Montgomery." He investigated numerous locations and First Southern preferred the Greystone Hotel building. Nicrosi investigated the accessibility and visibility of the Greystone, obtained renovation information *783 from an architectual firm, obtained information for a modernizing feasibility-study from Otis Elevator Co., Triangle Electric Co. and Capital Refrigeration Co., investigated the availability of parking, and secured an appraisal from a qualified real estate broker, who appraised the property at $485,000.00 to $545,000.00. At the conclusion of his investigation, Nicrosi was authorized in writing "as our representative, to negotiate the purchase of the former Greystone Hotel Building, from the Union Bank & Trust Company. * * * Please keep the names of Security Federal and First Federal Savings and Loan Association of Mobile confidential until a reasonably firm agreement is reached, if possible." Also, the sales agreement, dated August 22, 1974, provided in § 10:
"Both parties agree that this sale was brought about by William Nicrosi, acting for the Purchaser. The Purchaser shall pay any compensation due him."
This sales agreement was signed after the conclusion of all negotiations between the parties. Each party recognized that Nicrosi was the party who "brought about the sale." The purchase price was the very least which Union Bank would accept and was the floor price which had been quoted to Nicrosi.
Both parties to this sale agreed that the "Purchaser shall pay any compensation due him." We stress again that this sales agreement was not executed at the beginning or the middle of the negotiations but at the end, shortly before the exchange of the purchase money and the deed.
The dispute arose between First Southern and Nicrosi as to amount of the compensation to be paid to Nicrosi. The dispute was settled by the trial court after hearing all the testimony and the arguments of the parties.
The argument that Nicrosi did not spend many days and hours on the project, and thus was not entitled to as large a fee as was awarded, is not persuasive. It is common knowledge that compensation to realtors in deals similar to this are based upon a percentage of the sales or purchase price. This practice is not limited to real estate transactions, but is prevalent in other trades and professions.
When the evidence is heard orally before the trial court, the finding of the court has the effect of a jury's verdict and will not be disturbed on appeal unless plainly erroneous or manifestly unjust. And we must affirm the trial court's decree if fairly supported by credible evidence under any reasonable aspect, regardless of what might be our view of the evidence. Daugherty v. Gulf Shores Motel, Inc., 292 Ala. 252, 292 So.2d 454; Dunlavy v. Dunlavy, 283 Ala. 303, 216 So.2d 281.
These same legal principles apply to the trial court's finding that "During the course of said employment, the Plaintiff [Nicrosi] acted at all times in good faith in his dealings with said Defendant."
AFFIRMED.
HEFLIN, C. J., and BLOODWORTH and EMBRY, JJ., concur.[1]
MADDOX, FAULKNER and SHORES, JJ., recuse themselves.
JONES, J., dissents.
ALMON, J., not sitting.
JONES, Justice (dissenting):
This is a suit by a real estate agent against his principal where the facts show, without dispute, about as clear a case of bad faith as one could imagine. The fact *784 that the principal, First Southern Federal, eventually acquired the property for approximately their initial offer of purchase from the seller should not influence the result. Nicrosi was Southern Federal's agent. This agency relationship imposed the legal requirement that Nicrosi faithfully disclose to his principal all of the relevant facts and circumstances surrounding the transaction. Surely, no citation of authority is needed for the proposition that the general law of agency prohibits dual representation here typified by the undisputed evidence.
My objection with the majority opinion is its application of the ore tenus scope of review rule to the trial Court's judgment that Nicrosi was not guilty of bad faith in his dealing with Southern Federal. The ore tenus rule applies only to the trial Judge's factual findings on disputed evidence. Sterling Oil of Oklahoma v. Pack, 291 Ala. 727, 287 So.2d 847 (1973). The trial Court's ruling on Nicrosi's bad faith, however, was not such a finding. The evidence of Nicrosi's bad faith is virtually undisputed. The trial Judge's ruling did not result from a choice between different versions of the facts; rather, it resulted from an application of established legal principles to an undisputed set of facts. Such a ruling is fully reviewable regardless of the mode of trial held below.
In order to address the trial Judge's error, I will first set out the evidence of bad faith and then review the principles of law which govern that set of facts. Nicrosi was employed to assist Southern Federal secure a new location. During the course of Nicrosi's employment, Southern Federal authorized Nicrosi to approach Union Bank for the purchase of a building called the Greystone Hotel in Montgomery. Based on an appraisal opinion that the Greystone had a value range of between $485,000 and $545,000, Southern Federal authorized Nicrosi to offer Union Bank $485,000 for the property. Nicrosi transmitted this offer to Union Bank's president, Mr. Neill, who in turn presented the offer to Union Bank's Board of Directors for approval. The Board authorized Neill "to sell the Greystone Hotel for $503,055.12 down to $485,000." Neill told Nicrosi that the Bank would not accept Southern Federal's $485,000 initial offer, but would accept an offer of $503,500.
One week after Neill had given Nicrosi the price of $503,500, Nicrosi called Neill and asked him for two lettersone saying the Bank would sell the Greystone for $530,000 gross and pay Nicrosi's commission, and the other saying the Bank would pay Nicrosi's commission of $26,500. Nicrosi only gave Southern Federal one of those two lettersthe one which said the Bank would sell for $530,000 gross and pay his commission. Nicrosi did not give Southern Federal the other letter which gave the figure of $503,500, the selling price for the building, nor did he otherwise inform Southern Federal of this fact.[1] On August 13, 1974, Nicrosi wrote Southern Federal a letter in which he stated nothing about his commission of $26,500. This nondisclosure to Southern Federal, Nicrosi's principal, is the essence of Nicrosi's bad faith. The rule in broker's fee cases is quite clear:
"A real estate agent must be faithful to his principal; he must not be disloyal; he must act in good faith with him; he must represent the interests of his principal; and, if he is guilty of bad faith with his principal in the transaction of the business for which he is to receive commissions, he thereby forfeits his compensation." Berry v. Marx, 206 Ala. 619, 91 So. 583 (1921).
This rule is simply a specific application of general agency law. By reference to the *785 law of agency, it is clear that Nicrosi's failure to make a complete disclosure to Southern Federal of his negotiations with Union Bank amounted to bad faith toward Southern Federal. The effect of Nicrosi's dealings with Union Bank was to make himself an agent for both parties. By obtaining the counteroffer of $530,000 with a $26,500 fee provision from Union Bank Nicrosi became the agent of Union Bank for the purpose of persuading Southern Federal to accept that counteroffer. Since Nicrosi did not reveal the full details of the arrangement to Southern Federal or tell Southern Federal of Union Bank's original counteroffer of $503,500, he concealed the fact that he was actually an agent for both parties. The law of agency precludes a broker from serving two principals without making full disclosure to both of them. If a broker breaches this duty of disclosure, he forfeits his right to compensation. Green v. Southern States Lumber Co., 163 Ala. 511, 50 So. 917 (1909). A strong and unequivocal statement of this rule is found in Gray v. Pankey, 211 Ala. 539, 100 So. 880 (1924):
"A broker or agent, who acts for both the vendor and the vendee to a sale and purchase of real estate, is guilty of fraud which will prevent him from recovering commissions or compensation from either. The broker or agent `can only avoid its effect to deny him compensation by showing that both parties knew of his relation in the premises, and, so knowing, consented to his acting in such inconsistent capacities.' He must show `both principals are given fully to understand the situation and consent thereto.'"
Nicrosi violated his duty to fully disclose his dual agency capacity to Southern Federal, and he should forfeit any right to compensation. I repeat that I do not reach this conclusion by reviewing the trial Judge's factual findings but only by reviewing his application of the law of agency to the undisputed facts.
One other aspect of this case which serves to dramatize the trial Court's error is worthy of comment. The trial Court, in arriving at the award, gave credence to the dual agency capacity which Nicrosi maintained between Union Bank and Southern Federal. Keep in mind that Nicrosi had not contracted with Southern Federal for a percentage commission. Their only arrangement, which was verbal, was to the effect that Southern Federal would pay Nicrosi for his time and effort, and reimburse his expenses (in other worrds, quantum meruit). The judgment of the trial Court in favor of Nicrosi for $32,095 can be arrived at under the evidence only by combining the $26,500 commission reflected by Nicrosi's contract with Union Bank (the seller) with a determination of value of Nicrosi's services in finding a new location for Southern Federal prior to his dealing with Union Bank. In other words, the two weeks of services by Nicrosi before August 1, 1974 (the date the Greystone Hotel property entered the picture) was valued by the Court at $5,595, and the balance of the total judgment is derived from the contractual arrangement between Nicrosi and Union Bank. The $29,100 commission claimed by Nicrosi (6% of $485,000) is totally supported by Nicrosi's own version of the contractual arrangement which he had with Southern Federal. Thus, the trial Court, by quantum meruit for the period prior to August 1, with a commission for the Greystone Hotel transaction subsequent to August 1, implicitly acknowledged Nicrosi's dual capacity as agent for both Union Bank and Southern Federal. The facts are without dispute that such dual capacity was not fully disclosed by Nicrosi to Southern Federal. As a matter of law, then, Nicrosi's conduct has precluded him from entitlement to any compensation.
I would reverse.
NOTES
[1] Since the court was reduced to six judges because of disqualification, the concurrence of four judges is sufficient. Tit. 13, § 14, Code 1940, as amended.
[1] Indeed, Southern Federal did not learn of Nicrosi's dual agency capacity until after its purchase of the Greystone Hotel property had been consumated and after its written agreement with Nicrosi to pay for Nicrosi's services.