Defendants, Semo Aviation, Inc., a Missouri corporation, and Glenn Hopwood, President of Semo, appeal from a jury verdict for plaintiffs, Southeastern Airways Corp., an Alabama corporation, Eugene Hovis, and his wife Martha Hovis, and from a denial of motions for judgment notwithstanding the verdict or, alternatively, new trial. Plaintiffs cross-appeal from the jury verdict for defendants, Dixie Flight Center, Inc., a Tennessee corporation, Ralph Smelzer and Art Berard, and from the trial court's denial of plaintiffs' new trial motion in the event this Court should reverse defendants' appeal. We affirm. Therefore, plaintiffs' cross-appeal is moot.
Plaintiffs, Martha and Eugene Hovis, were Alabama residents at the time this lawsuit arose and were the sole stockholders in Southeastern Airways Corp., a corporation engaged in the air charter business in Double Springs, Alabama, and elsewhere. In the summer or early fall of 1974, plaintiffs sought to obtain air mail contracts from the United States Postal Service, and submitted bids on four such contracts. In October, 1974, plaintiffs were awarded two of the routes. Plaintiffs needed four additional planes to service these routes, and began to look for the additional airplanes.
In November, 1974, Art Berard of Dixie Flight Center, Inc. (an airplane brokerage firm in Memphis, Tennessee) having learned of plaintiffs' interest in securing additional planes, telephoned plaintiff Hovis from Memphis on at least two occasions. The testimony is in conflict as to which representations were made to Mr. Hovis in each call. However, the evidence reflects that during one of the conversations, Mr. Berard told Mr. Hovis that he had located four planes, owned by Semo, which Hovis might wish to purchase. A meeting was arranged in Memphis to discuss the matter. At that meeting, Mr. Hovis agreed, after seeing "spec. sheets" on the four planes, that the planes appeared to meet his needs. Several days later, Mr. Hovis and his attorney and a mechanic met Mr. Smelzer, President of Dixie, and Mr. Berard of Dixie in *Page 938 
Holly Springs, Mississippi, and all flew to Malden, Missouri, to view the planes. While in Malden, Mr. Hovis met Mr. Hopwood, president and owner of Semo, and entered into a contract to purchase the planes. There is testimony to the effect that Hovis' agreement to purchase the planes was made upon the condition that Semo would "annual" the planes, clean them, and deliver them to Double Springs, Alabama, on November 29, 1974. There is also testimony that Hopwood agreed to do the "annuals," while Smelzer and Berard agreed to clean the planes. Hopwood testified that Semo never agreed to perform annual inspections.
On November 29, 1974, the date the parties had agreed upon for delivery of the planes, Berard came to Double Springs to pick up the checks for the planes. At that time, Berard delivered written invoices and "spec. sheets" on the planes and copies of the bills of sale. Hovis refused to pay for the planes, however, since the planes had not been delivered. On December 2, 1974, Hovis came to Memphis, Tennessee, where the four planes were delivered, the papers were signed, and the planes paid for. Subsequent to delivery of the planes, numerous defects developed in them, which defects, plaintiffs allege, caused plaintiffs to incur various penalties and expenses and to lose the U.S. Postal Service contracts.
Plaintiffs then brought suit against the Semo defendants, as sellers and principals, and the Dixie defendants, as agents, alleging fraud and misrepresentation as well as breach of warranties. The defendants were served pursuant to Tit. 7, § 199 (1), Code 1940, an Alabama "long-arm" statute. The case was tried to a jury which returned a verdict in favor of plaintiffs and against the Semo defendants for $95,000, and a verdict in favor of the Dixie defendants. After Semo's motion for new trial was overruled, this appeal ensued.
 "Long-Arm" Jurisdiction
The Semo defendants contend that the trial court did not secure in personam jurisdiction over them, pursuant to Tit. 7, § 199 (1). They further contend that even if they fell within the statute's intendment, the assertion of jurisdiction violated due process. We cannot agree.
The then applicable Tit. 7, § 199 (1) provided, in pertinent part, as follows:
 "Any nonresident person, firm, partnership, general or limited, or any corporation not qualified under the Constitution and laws of this state as to doing business herein, who shall do any business or perform any character of work or service in this state shall, by the doing of such business or the performing of such work, or services, be deemed to have appointed the secretary of state, or his successor or successors in office, to be the true and lawful attorney or agent of such nonresident, upon whom process may be served in any action accrued, accruing, or resulting from the doing of such business, or the performing of such work or service, or relating to or as an incident thereof, by any such nonresident, or his, its or their agent, servant or employee. And such service shall be valid whether or not the acts done in Alabama shall of and within themselves constitute a complete cause of action. . . ."
Until quite recently, an analysis of this question would have, as Semo defendants suggest it still does today, consisted of a bifurcated inquiry. Initially, a court would decide if assertion of in personam jurisdiction over a non-resident defendant was authorized by the terms of the statute. If a court decided it was not so authorized, the inquiry would be ended, and the court would not assert jurisdiction. E.g. NewYork Times Company v. Conner, 291 F.2d 492 (5th Cir. 1961). Under this analysis, the question would often revolve around the issue of whether the defendant was "doing business" in Alabama or whether his action "accrued" here. See id. If, on the other hand, the assertion of jurisdiction was proper under the terms of the statute, a court would then decide whether the assertion of jurisdiction violated due process. See id.;Elkhart Engineering Corp. v. Dornier Werke, 343 F.2d 861 (5th Cir. 1965). *Page 939 
More recently, however, this Court as well as the Fifth Circuit has eschewed this two-step inquiry and has instead held that the scope of substituted service under the statute is as broad as the permissible limits of due process. DeSotacho, Inc.v. Valnit Industries, Inc., 350 So.2d 447 (Ala. 1977); Schoelv. Sikes Corp., 533 F.2d 930 (5th Cir. 1976). The rationale is now officially sanctioned by Rule 4.2, A.R.C.P., which brings together the various Alabama "long-arm" statutes into one rule.See "Committee Comments" to Rule 4.2.
 "Alabama at present has six separate `long-arm' statutes. See Tit. 7, sections 192, 193, 199, 199 (1/2), 199 (1), 199 (2), Code 1940. ARCP 4 as originally adopted, among other things, brought together these statutes in one rule. There has been great debate in Alabama legal literature relating to the scope of Alabama's `longest' longarm statute, Tit. 7, Sec. 199 (1), Code 1940 and whether or not it extends as far as the due process clause allows. See, e.g., Note, Alabama's Nonresident Jurisdiction Statutes; The Reach of the Long-Arm, 24 Ala.L.Rev. 777 (1972); Note, Conflict of Laws — The Limits of Alabama's `Long-Arm' Statute Falls Short of Those Allowed By Due Process, 20 Ala.L.Rev. 326 (1968); Harrison, Recent Trends In the Field of Conflict of Laws, 15 Ala.L.Rev. 1 (1962).
 "A large part of the confusion has resulted from the `doing business' language in Sec. 199 (1), coupled with judicial pronouncements that Sec. 199 (1) was as broad as the due process clause allowed. When considering this revised rule, some members of the committee felt that the adoption of ARCP 4.2 (a) would constitute an expansion of in personam jurisdiction of Alabama courts, and therefore was without the authority of the enabling act. However, other members of the committee and the final consensus of the committee was that since the Alabama supreme court had twice stated, and the fifth circuit has at least four times recognized, that Sec. 199 (1) is as broad as the permissible limits of due process, justification for revamping this important area of Alabama law by rule existed and revision would be undertaken. See New York Times Co. v. Sullivan, 273 Ala. 656, 144 So.2d 25 (1962), rev'd on other grounds, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686
(1964) (`The scope of substituted service is as broad as the permissible limits of due process.'); Ex Parte Martin, 281 Ala. 135, 199 So.2d 836 (1967); Elkhart Engineering Corp. v. Dornier Werke, 343 F.2d 861, 865
(5th Cir. 1965); New York Times v. Conner, 310 F.2d 133 (5th Cir. 1962). Sells v. International Harvester Co., 513 F.2d 762 (5th Cir. 1975) invokes the standard Sullivan, supra, doctrine as to the extension of Alabama's long-arm jurisdiction to the outer limits of due process in a context where legislative definition of a transactional basis for the assertion of jurisdiction may have been absent. This revision affords adequate definition of transactional bases for assertion of jurisdiction, thus filling any void that may have existed at the time of the decision in Sells, supra." Id.
At this time, therefore, the issue becomes, from the outset, whether the assertion of jurisdiction over the defendants violates due process. Thus, Alabama may assert jurisdiction over nonresident defendants if they have sufficient "minimum contacts" with this state such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." Shaffer v. Heitner, 433 U.S. 186,97 S.Ct. 2569, 53 L.Ed.2d 683 (1977); International Shoe Co. v.Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Moreover, an estimate of the inconvenience which would result to the corporation from a trial away from its home or principal place of business is relevant in this connection. Id.
 "Thus, the inquiry into the State's jurisdiction over a foreign corporation appropriately focused not on whether the corporation was `present' but on whether there have been
 "`such contacts of the corporation with the state of the forum as make it reasonable, in the context of our federal system of government, to require the *Page 940 
corporation to defend the particular suit which is brought there.'" Id., at 317, 66 S.Ct., at 158.
 "Mechanical or quantitative evaluations of the defendant's activities in the forum could not resolve the question of reasonableness:
 "`Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment in personam against an individual or corporate defendant with which the state has no contacts, ties, or relations.' Id., at 319, 66 S.Ct., at 160.
 "Thus, the relationship among the defendant, the forum, and the litigation, rather than the mutually exclusive sovereignty of the States on which the rules of Pennoyer rest, became the central concern of the inquiry into personal jurisdiction. The immediate effect of this departure from Pennoyer's conceptual apparatus was to increase the ability of the state courts to obtain personal jurisdiction over nonresident defendants. See, e.g., Green, Jurisdictional Reform in California, 21 Hastings L.J. 1219, 1231-1233 (1970); Currie, The Growth of the Long Arm: Eight Years of Extended Jurisdiction in Illinois, 1963 U.Ill.L.F. 533; Developments, supra, at 1000-1008."
Shaffer v. Heitner, supra at 97 S.Ct. 2580.
We hold that the Semo defendants did have the requisite minimum contacts. First, the agreement to buy the planes between Hovis and the defendants was entered into on the condition that the planes would be delivered in Alabama and that Hovis would use the planes to service his mail contracts here. Second, Mr. Berard of Dixie came to Alabama to pick up Hovis' checks for the planes and to deliver the written invoices and "spec. sheets." Third, several phone calls were made to Hovis in Alabama during the negotiation of the contract. Fourth, a number of calls were made by the defendants to an Alabama bank to help Hovis secure the necessary financing to purchase the planes. Fifth, Mrs. Hovis stated in her affidavit that Semo was flying regularly scheduled flights into Alabama pursuant to a mail contract of their own.
 Agency
In order to reach such holding, of course, it is necessary that we find that there is sufficient evidence in the record to support Smelzer's and Berard's agency when they made the various representations and contracts with Hovis, so that Semo is bound under the doctrine of respondeat superior. This, we have no trouble doing.
In Alabama, agency is determined by the facts, and not by how the parties may characterize the relationship. Cox v. HowardHall Company, Inc., 289 Ala. 35, 265 So.2d 580 (1972); King v.Earley, 274 Ala. 116, 145 So.2d 831 (1962). If the facts establish the relationship of principal and agent, the intention of the parties is immaterial, and the character of the relationship is not affected by an agreement between the parties that an agency does not exist, or that some other relation does exist. Cox v. Howard Hall Company, Inc., supra;Rust Engineering Co. v. State, 286 Ala. 589, 243 So.2d 695
(1971).
We think the facts in the case at bar do warrant a finding of agency by the jury. Art Berard the agent of Dixie initiated the phone call to Hovis in which he informed Hovis that he had some planes which Hovis might wish to purchase. It is undisputed that those planes belonged to Semo. It is also undisputed that during Hovis' trip to Memphis where he met with Berard, Berard showed him "spec. sheets" on Semo's planes. Perhaps most important of all is the fact that the written invoices delivered by Berard to Hovis in Double Springs, Alabama, bore the inscription "Dixie Flight Center as Broker for SemoAviation, Inc.," and were signed by Art Berard of Dixie and Gene Hovis of Southeastern.
In this regard, we think the following quotation from King v.Earley, supra, is especially apt: *Page 941 
 "Concerning `brokers' we find the following set forth in Portsmouth Cotton Oil Refining Co. v. Madrid Cotton Oil Company, 195 Ala. 256, 71 So. 111:
 "`* * * What was said in the case of Stratford v. City Council of Montgomery, 110 Ala. 619, 625, 20 So. 127, 128, defining a commercial broker, is accurate and apt: "A `broker' is defined as `an agent employed to make bargains and contracts between other persons in matters of trade, commerce, or navigation for a compensation commonly called "brokerage."' Story on Agency (8th Ed.) § 28. Every broker is, in a sense, an agent, but every agent is not a broker. There are, however, so many incidents common to both relations that it is difficult to define the precise line of demarcation."'
 "`Mr. Mechem, in his excellent work on Agency (volume 2 [2d Ed.] p. 1966, § 2397), has well stated the law as to the authority of commercial brokers to bind their principals: "A broker in the ordinary case is known to be an agent acting under a limited authority. He is usually authorized to buy or sell a particular thing in specified quantities and at a limited price. He is often described in the books as a special agent, and in order to bind his principal he must keep within the limits of the authority conferred upon him. Secret or private instructions, as that term has heretofore been defined, which conflict with the usual or apparent powers will no more affect the rights of third persons who in good faith deal with the broker in ignorance of them than in the case of dealing with any other agent, though their violation may make the broker liable to his principal."'"
Is there, then, an inconsistency in the verdict? The question arises in the context of whether the verdict against the principal, Semo, and in favor of its agent, Dixie, offends the doctrine of respondeat superior. We hold it does not. The rule that a verdict cannot stand which finds against the principal and for his agent is limited to cases of vicarious liability where the principal's liability is predicated solely on the acts or omissions of his agent. See Otts v. Gray, 287 Ala. 685,255 So.2d 26 (1971). Where, as here, however, the principal significantly contributed to the misdeeds, if it did not entirely control the agent's acts, this rule has no applicability.
 Conflict of Laws
The Semo defendants next contend that the trial court erred in applying Alabama law to the fraud and misrepresentation counts. They contend that since this Court's choice of law rules regarding torts is to apply the law of the place of the tort, then the trial court should have applied Tennessee law, which, they allege, is the place of the alleged misrepresentations, and which they say does not impose liability for mistaken or innocent misrepresentations. We cannot agree. Rule 44.1, A.R.C.P. requires, at a minimum, that "reasonable written notice" be given when a party intends to plead foreign law. It is stated in Moore's Federal Practice
that the reasonableness test of Rule 44.1 is similar to that employed in Rule 30 regarding the time for taking depositions, and suggests that reference be made to that discussion, viz:
 "In determining the reasonableness of a notice of the taking of a deposition, the court should consider not only the question of whether there is reasonable notice to the adversary so he can appear for cross-examination, but also the closeness of the trial date. Where notice was given only a few days before the day set for trial, the court sustained a motion to vacate the notice and ordered that depositions that had been taken or might be taken could not be used at the trial. Spangler v. Southeastern Greyhound Lines (E.D.Tenn. 1950), 10 F.R.D. 591, 14 F.R. Serv. 30a.31, Case 1."
4-A Moore's Federal Practice, ¶ 30.57[3].
It can be seen from this discussion that two very relevant factors are reasonable notice to the adversary and closeness of the trial date. *Page 942 
We think that where, as here, the Semo defendants raised this issue for the first time in chambers on the day of the trial, having had a number of months for trial preparation, the notice was simply not reasonable, as is required by the Rule.
 Sufficiency of the Evidence
Semo defendants finally contend that there was no evidence to support a verdict in favor of Mr. and Mrs. Hovis. Again, we cannot agree. A verdict is presumed to be correct. FirstSouthern Federal Savings and Loan Association of Mobile v.Nicrosi, 333 So.2d 780 (Ala. 1976). The refusal of the trial court to grant a new trial because of the insufficiency of the evidence strengthens the presumption that the verdict is correct. Id. Where, on appeal, the sufficiency of the evidence to support the verdict is at issue, only those tendencies of evidence most favorable to the verdict are reviewed, and such inferences as the jury or court are free to draw are indulged.Id. Having reviewed the evidence in this posture, we cannot say that there was insufficient evidence to support a verdict for the Hovises. We think the evidence is more than ample to support a verdict for the Hovises. Both Mr. and Mrs. Hovis personally guaranteed the loans which they obtained to purchase the four planes. Additionally, misrepresentations were made directly to both of them by the defendants. Moreover, the financial travail caused the Hovises led to the loss of their jobs and property.
This case is, therefore, due to be and is, hereby affirmed. In view of the resolution we reach, it is unnecessary to consider plaintiffs' cross appeal.
AFFIRMED.
TORBERT, C.J., and FAULKNER, ALMON and EMBRY, JJ., concur.