216 So.2d 281

**Mary Jo DUNLAVY**

v.

**Marvin H. DUNLAVY, Sr.**

6 Div. 582.

Supreme Court of Alabama.

Nov. 21, 1968.

Kenneth Perrine, Leader, Tenenbaum, Perrine & Swedlaw, Birmingham, for appellant.

McEniry, McEniry, & McEniry, Bessemer, for appellee.

MERRILL, Justice.

This appeal is from a decree granting a divorce to the husband, appellee, on the ground of cruelty, denying the cross bill of the wife, appellant, and assessing the costs.

Appellee's first wife died and later, in 1960, at age 71, he married appellant, who was then 44 years old. Appellant had divorced her first husband in 1949, after living with him for about 12 years. That same year, she married a Mr. Hind, some 18 years older than she. He died in 1951, willing all his property to her, and deeding a house and the proceeds of some insurance policies. Appellant paid $77,500 for an apartment building in 1957, and after her marriage to appellee in 1960, a furniture business she owned in Gadsden was lost when the building was destroyed by fire, and the insurance paid her for the loss was $66,000. Appellant testified that she knew when she married appellee that he had given each of his children $100,000, and to one son, L. E. Dunlavy, a furniture business, and to the other son, M. H., Jr., a house in Bessemer. After their marriage, appellee gave her $30,000 to pay on the apartment building.

The parties separated in 1964 and appellant filed a suit for divorce from bed and board and tied up appellee's bank account and his other assets. In order to effect a reconciliation, she demanded and received $6,000 in cash and 112 shares of Liberty

National stock ($82.50 per share). Later, they moved to the son's house in Bessemer.

Appellee filed his bill for divorce on the 6th day of October, 1967. After the demurrer was overruled, appellant filed her answer denying the allegations of cruelty and filed a cross bill alleging that appellee had abandoned her on October 6, 1967, claiming a divorce from bed and board and asking support and maintenance pendente lite together with permanent alimony and attorney's fees. The trial court ordered a reference, which was duly held before the register, and on January 5, 1968, the register made his report denying the appellant any support or maintenance pendente lite or any sum for the payment of attorney's fees. The appellant filed objections and exceptions to the report of the register but no ruling was ever made upon them by the court nor does the record disclose any request to the court for a ruling. On February 1st, appellant filed an amendment to the answer and cross bill by making L. E. Dunlavy and M. H. Dunlavy, Jr., the two sons of appellee, party respondents, alleging there was a conspiracy between the appellee and his two sons to deprive the appellant of her rightful interest in the property of the appellee by the appellee deeding his real estate to the sons or transferring his cash and interest in business to his sons or to a trust fund over which he maintained control; and appellant prayed that the deed to one of the sons be declared null and void, that the other son return the furniture business back to his father and that the trust agreement be declared null and void as a fraud against the wife.

The cause came on to be heard on the 7th day of February, 1968.

Appellee testified that on or about September 28, 1967, around 8:00 A.M., while he and appellant were in the breakfast room, they had a discussion regarding money, that she hit him in the face, breaking his glasses, cutting his nose and cutting him behind the ear; that a few days later in the basement she pretended like she was going to hit him with a crowbar and "I think she said she was going to hit me"; that she had a pistol and had threatened to shoot him more than once; that she said she was going to shoot his son Eddie if she had to do it at appellee's funeral; that appellant told him she would shoot him if he ever left her, that he stayed in the house until October 6 when his wife "had left for Birmingham and I came right out behind her"; and that he was afraid of what she might do to him when she was "mad" or "in a rage."

The decree was rendered on February 28, 1968, and reads in pertinent part:

"This cause coming on to be heard was submitted upon the pleadings, and all the evidence being heard in open court and taken down by the Official Court Reporter, the Court proceeded to hear and determine said cause.

"The Court being satisfied from all the evidence presented that the Complainant and Cross Respondent is entitled to the relief prayed for in the bill of complaint, and the Respondent and Cross Complainant is not entitled to the relief prayed for in the cross-bill of complaint as amended, the Court being particularly impressed by the actions and demeanor of the witnesses on the stand;

"IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED by the Court as follows:

"First: That the relief sought by the Respondent and Cross Complainant in the cross-bill of complaint as amended be and the same is hereby denied.

"Second: That the bonds of matrimony heretofore existing between the Complainant and Cross Respondent and Respondent and Cross Complainant are dissolved, and the said M. H. Dunlavy, Sr. is forever divorced from the said Mary Jo Dunlavy.

\*    \*    \*    \*    \*    \*

"Fifth: That the Respondent and Cross Complainant is the owner of all the furniture and fixtures located in the apartment building owned by her in Birmingham as of the time of the sepa-

ration of the parties, to-wit: October 6, 1967, and the Complainant and Cross Respondent is the owner of all the furniture and household furnishings located in the house at 522 Alice Street, Bessemer, Alabama, as of the time of the separation of the parties on, to-wit: October 6, 1967."

Appellant's first assignment of error charges that the court erred "in failing to appoint a court reporter and having the testimony transcribed and filed in said cause as required by Equity Rule 56." This assignment is without merit. The decree shows that the testimony was taken by the "Official Court Reporter" and the certificate following the transcript of the evidence is signed by the person designating himself as the Official Court Reporter and also by the trial judge:

Assignment 2 charges that the court erred in taking the case under submission without a note of testimony as required by Equity Rule 57. The second sentence of Equity Rule 57 reads: "But it is not necessary to note any testimony given orally before the judge in open court under Rule 56." In brief, appellant states: "It is not contended that a note of testimony is required when the case is heard orally by the court, George v. George, 255 Ala. 190, 50 So.2d 744." The assignment is without merit.

Assignments of error 4 and 9 are argued together. No. 4 charges that the court erred and abused its discretion in not allowing alimony pendente lite and attorney's fees. This assignment is clearly without merit because there was never any ruling by the court on the question. Only adverse rulings of the trial court are subject to an assignment of error and reviewable on appeal. Thompson v. State, 267 Ala. 22, 99 So.2d 198; Mulkin v. McDonough Construction Co. of Ga., 266 Ala. 281, 95 So.2d 921; Johnson v. Sexton, 277 Ala. 627, 173 So.2d 790. Moreover, we have held that where there was no determination of the question of alimony and counsel fees pen-

dente lite in the trial court, an appeal does not bring those questions before us for review. Apperson v. Apperson, 217 Ala. 157, 115 So. 229.

Assignment 9 charges error in the failure to include the cost of the transcript of the record as part of the costs in the trial below, and also charges error in the failure to grant alimony pendente lite and attorney's fees. An assignment of error which embraces more than one ruling must, to be sustainable, be good as to all. Lane v. Housing Authority of City of Elba, 270 Ala. 383, 118 So.2d 725, and cases there cited. The first part of assignment of error 9 is without merit and the assignment falls in toto. We are not to be understood as intimating that there is any merit in the second part of assignment 9.

Assignment of error 6 charges that the evidence did not support the charge of cruelty, and assignment 7 charges that even if there was cruelty on the part of appellant, the evidence shows condonation on the part of appellee.

The testimony shows that this marriage was marred by constant bickering over appellee's money and the effort of appellant to get more of it. Without going into details, we think the evidence of appellee, already stated in part, was sufficient to support the decree of the trial court in awarding the divorce on the ground of cruelty.

It is our duty to affirm the decree of the trial court if that decree is fairly supported by credible evidence, regardless of this court's view of the evidence. Lamar v. Lamar, 263 Ala. 391, 82 So.2d 558; Rodgers v. Thornton, 254 Ala. 66, 46 So.2d 809. There was conflict in the evidence, and appellant's account of the incident in which appellee's glasses were broken and his face cut was: "I put my arms up around his neck, and I guess I was pressing down on this piece that goes over his ears and he said, 'Mary, them damn glasses are cutting my face. Just hold up a minute, will you.'

I kissed him again and said, 'Are you going to give me some money for clothes?' And he said, 'No, because you wouldn't sign the deed. I'm never going to give you any-more money until you sign it.' " The trial court evidently accepted appellee's version of the incident.

Assignment 7 charges that the court erred in ignoring the testimony which ap-pellant claims showed condonation of the cruelty even if the evidence supported that charge. Appellant argues that since the alleged cruelty occurred on September 28 and the appellee did not leave the house un-til October 6 or 7, all acts of September 28 and any alleged threats or acts of violence prior thereto were condoned. It is also argued that there was evidence that, after the separation, they met at a motel in Cull-man, met at other places for dinner, and talked with each other over the telephone.

■ The mere fact that the appellee con-tinued to live in the family home after the acts of cruelty were committed does not constitute a condonation. Tate v. Tate, 274 Ala. 350, 148 So.2d 627; Calhoun v. Cal-houn, 278 Ala. 610, 179 So.2d 737.

■ We have held that two acts of sexual intercourse with each other during the separation of the parties does not neces-sarily establish condonation, where there is no intention to forgive and resume marital relations. Cox v. Cox, 267 Ala. 72, 100 So.2d 35; Campbell v. Campbell, 246 Ala. 107, 19 So.2d 354, 155 A.L.R. 130. Here, no sexual intercourse was admitted, and we cannot say that the meetings and conversa-tions of the parties amounted to condona-tion of appellant's cruelty to appellee.

■ Assignment 8 charges error in paragraph 5 of the decree which awards the ownership of the furniture. Appellant charges that this matter was not in the is-sues raised in the case. There was testi-mony that appellee had bought all the furni-ture located in the house in Bessemer and had bought some of the furniture located in appellant's apartment building in Birming-ham. This part of the decree was favorable to appellant and certainly within the power of the court to settle finally the matters be-tween them. Paragraph 5 of the decree was not prejudicially injurious to appellant.

■ Assignment 5 charges that the court erred in failing to hold the trust agreements, dated August 5, 1964 and March 27, 1967, null and void. Inasmuch as the trial court did not grant any alimony to the wife, and we affirm the decree, she is neither a creditor nor a claimant to any of her husband's property, and his disposition of his personal property is no legal concern of hers.

■ Assignment 10 charges error in the overruling and denying the "motion for new trial" or more correctly, the application for rehearing. Such a decree, unless it modi-fies the final decree, is not subject to review on assignment of error on appeal from the final decree. Skipper v. Skipper, 280 Ala. 506, 195 So.2d 797; Phillips v. Phillips, 277 Ala. 2, 166 So.2d 726.

■ When the evidence is heard orally by the trial court, that court's finding has the effect of a jury's verdict and will not be disturbed on appeal unless plainly erroneous or manifestly wrong. Lamar v. Lamar, 263 Ala. 391, 82 So.2d 558, 3 Ala. Digest, Ap-peal & Error, ☞1008(1), 1009(1). We find no reversible error.

Affirmed.

LIVINGSTON, C. J., and LAWSON and HARWOOD, JJ., concur.