This appeal is from the alimony, child support and property division provisions of a divorce decree. We affirm.
Mr. and Mrs. Hawkins were married on October 20, 1972. A daughter, Elisa Aliene, was born on May 28, 1973. The parties separated on or about April 1, 1975, and on April 7 Mrs. Hawkins filed for divorce on the ground of incompatibility. Mr. Hawkins answered on April 21 and denied the incompatibility. The parties were reconciled between May 24 and October 15 when they again separated. Mr. Hawkins amended his answer on December 1 to admit the incompatibility and cross-billed for divorce.
The case proceeded to trial on March 18 and May 19, 1976, when the court took it under submission. On September 21 the court entered its decree granting the divorce to the parties, awarding custody of Elisa to Mrs. Hawkins with certain specified visitation rights for Mr. Hawkins, ordering Mr. Hawkins to pay $200 monthly child support and $10,000 alimony in gross (in $2,000 increments each 60 days). Mr. Hawkins received the family home, household furniture, appliances and furnishings (except for baby furniture and clothing and Mrs. Hawkins' clothing and personal effects), six horses, farm equipment and a 1975 Thunderbird. Mrs. Hawkins received a 1972 Mercury Montego. Mr. Hawkins was required to pay all bills of the parties incurred during the marriage, hospitalization insurance for the child, extraordinary medical and dental expenses of the child, and $1,000 fee for Mrs. Hawkins' attorney. Mrs. Hawkins appeals.
Mr. Hawkins was previously married to Gloria Hawkins for 19 years. Their union produced three children. Mr. Hawkins and his first wife were divorced on June 5, 1972. Under the decree of the Circuit Court of Putnam County, Florida, he was ordered to pay $200 monthly alimony; and the house and car were awarded to Gloria Hawkins. Mr. Hawkins was also ordered to pay $400 monthly child support ($133.33 each) but now pays nothing because two of the children are no longer minors and the third is residing with Mr. Hawkins.
Mr. Hawkins (age 46 at the time of trial) was an engineer employed by Moss Thornton Construction Company for work on Disney World at Orlando. When that work was completed, he was transferred to the Mobile area to begin work on an Interstate 10 project. Mr. Hawkins met Suzanne Horne and hired her to work in the Moss Thornton office as an account clerk. Later she was promoted to office manager. Around April of 1971 Mr. Hawkins and Suzanne began dating, engaged in sexual intercourse, and as a result Suzanne became pregnant. When she confronted Mr. Hawkins with this fact they got married. The couple apparently fared well from then until about six months before the first separation. Many problems led to the demise of this marriage: Mr. Hawkins' adverse relationship with Mrs. Hawkins' mother, Mrs. Hawkins' inability to supervise Mr. Hawkins' two sons by his prior marriage, Mr. Hawkins' long hours at work leaving little time for his family. We see no need to further extend this opinion with a discussion of the basis for this divorce. The evidence indicates the parties were entitled to a divorce. Phillips v. Phillips,49 Ala. App. 514, 274 So.2d 71, cert. denied, 290 Ala. 370,274 So.2d 80 (1973).
At the time of the divorce trial Mr. Hawkins was Vice President and Operations Manager of C.D. Hawkins Construction Company which was involved in other work on Interstate 10. He owns no stock in the company, two others having supplied the financing, but will receive a percentage of the net profit upon completion of the *Page 969 
project. His salary is $3,000 per month ($1,054 net take home pay every two weeks). He also receives $200 monthly automobile allowance and an expense account. At Christmas of 1975 he received a $3,000 bonus. Every year since 1971 he has earned at least $20,000. Between May 31, 1974, and April 30, 1975, he and another operated Bridge Coatings, Inc. for one project and received a $19,000 commission, but the corporation is now dormant. Mr. Hawkins has only minimal assets in banks — a checking account with a balance of $407.95 on April 26, 1975, and a savings account of $200. Mr. Hawkins owns five horses; a sixth is owned by a son. The six are valued at $9,000. Mr. Hawkins purchased a 1975 Thunderbird after the parties separated in April and still owes $3,500 on it. Mr. Hawkins paid $2,500 for the Montego which was awarded to Mrs. Hawkins.
The only other asset is the 3,600 square-foot family home. Mr. Hawkins received a bonus of $50,000 paid in materials by Moss Thornton on the completion of the project he headed. He used this material to build the house. He purchased the land (20 acres) for $1,000 per acre prior to the marriage with Suzanne. Work began on the house in July 1972 prior to the marriage in October. Mr. Hawkins testified he was building the house as an investment rather than as a home. The house and 20 acres have an appraised fair market value of $126,000. Mrs. Hawkins estimated the value of the house at between $200,000 and $275,000. A mortgage for $72,000 on the house is being repaid at the rate of $653.58 per month; between $70,000 and $71,000 of the principal is still to be paid. Mr. Hawkins testified that it would require $20,000 to finish the work on the house. The power bill on the all-electric home has averaged $140 a month for the last year. Mr. Hawkins had not reported $20,000 of the $50,000 bonus he received in materials, but will report it $10,000 per year for two more years and will be due to pay income tax thereon.
Mr. Hawkins has incurred the following additional debts: $3,000 loan from C.D. Hawkins Construction Company; $10,000 loan from American National Bank; $2,000 from First National Bank; $9,500 for work on the house by Kennedy Electric; $300 for lawn furniture; and $170 for a bedroom suite.
Mrs. Hawkins (age 29 at the time of trial) after the last separation was employed by Nelson Brantley Glass Company for $120 a week. She lives with her parents. (Prior to the marriage she had her own apartment.) She pays $26 each week for a nursery to keep the child during the day.
Mrs. Hawkins alleges error in the failure to award periodic alimony, the failure to award a larger amount of child support, and an inequitable division of property.
When the evidence is heard orally before the trial court, it is presumed to be correct just as a jury verdict and will not be disturbed on appeal unless plainly erroneous or manifestly wrong.Dunlavy v. Dunlavy, 283 Ala. 303, 216 So.2d 281 (1968). Mrs. Hawkins contends in brief and oral argument that this presumption of correctness should not apply because of the length of time between trial and the rendering of the decree. We find no merit in this contention that the ore tenus presumption should not be followed.
The trial court is vested with great discretion in making an award of child custody and setting the amount of child support and will not be reversed except for palpable abuse. Whiteport v.Whiteport, 283 Ala. 704, 220 So.2d 891 (1969); Colombaro v.Colombaro, 54 Ala. App. 157, 306 So.2d 23 (1975). We find no abuse of discretion in the award.
Likewise a trial court has a large amount of discretion in awarding alimony, Lee v. Lee, 283 Ala. 275, 215 So.2d 718 (1968);Capra v. Capra, 56 Ala. App. 90, 319 So.2d 286 (1975), and in making a division of property. Mullinax v. Mullinax, 56 Ala. App. 676, 325 So.2d 185 (1976); Clary v. Clary, 56 Ala. App. 494,323 So.2d 380 (1975). An award of alimony in gross may compensate the wife for her inchoate marital rights and also represent a division of the fruits of *Page 970 
the marriage where the liquidation of a couple's jointly-owned assets is not practicable. Hager v. Hager, 293 Ala. 47,299 So.2d 743 (1974). The only major asset here was the family home. It was not necessary to order its sale and divide the proceeds. The award of alimony in gross adequately compensates Mrs. Hawkins for the loss of her inchoate marital rights as well as representing her share of the property. While we might have fashioned a different relief more favorable to Mrs. Hawkins had we been sitting as the trial judge, we do not perceive any palpable abuse or error in the award of alimony or in the property settlement.
It is our duty to affirm the decree of the trial court when it is fairly supported by credible evidence, regardless of what our view of the evidence is or whether we would have reached a different result had we been the trial judge. Dunlavy v. Dunlavy,supra; Linderman v. Linderman, 49 Ala. App. 662, 275 So.2d 342
(1973).
In view of the above we decline to award a fee to the attorney for Mrs. Hawkins on this appeal. Hewitt v. Hewitt, 285 Ala. 516,234 So.2d 283 (1970); Campbell v. Campbell, 51 Ala. App. 295,285 So.2d 105 (1973).
AFFIRMED.
BRADLEY and HOLMES, JJ., concur.