This is a divorce case.
After an eight year marriage the parties to this proceeding were divorced for incompatibility. The judgment awarded the wife all furniture and fixtures in the parties' mobile home; vested title to the mobile home and a meat packing business in the wife subject to a $20,000 mortgage; the wife was also awarded title to the lease on the business and a lump-sum cash award of $8,500 or, in the alternative, $17,000, payable in 120 monthly installments of $141.50. A lien was imposed on one hundred sixty acres of land owned by the husband to assure payment of the cash award. The husband was also required to pay the current indebtedness of the parties except the mortgage indebtedness on the mobile home and business, plus $350 attorney's fee.
The husband's motion for new trial was denied and he appealed to this court. Subsequent to the appeal, the husband superseded the judgment by posting the required bond.
The facts show that at the time of the marriage the husband was employed at Fort Rucker, Alabama receiving a take-home pay of about $160 per week, and he owned one hundred sixty acres of unimproved land subject to a life estate in his mother.
Prior to the marriage the wife sold two lots she owned for $2,500 and used $750 of this sum to buy a half acre of land in the joint name of her husband to be and herself. She also bought a mobile home in their joint names and paid $2,000 cash as a down payment; the balance of the amount due was paid by a loan from the First National Bank of Dothan.
After the marriage the wife sold another parcel of property owned by her prior to marriage. The proceeds of the sale, i.e.
about $17,000, was used to pay off the $12,000 mortgage on the mobile home and the balance of about $5,000 was deposited to the parties' joint checking account. The wife also deposited about $2,500 of her funds in the joint checking account.
The lot in Level Plains, Alabama purchased by the wife for $750 prior to the marriage was sold for $1,250 and this sum was used to purchase a one acre lot in Geneva County, Alabama and to make improvements thereon. Title was taken in the joint names of the parties. Later the parties also purchased another one acre lot, taking title in their joint names and paying for it out of their joint checking account. On this parcel of land the parties erected a building and commenced a business operation known as "Weeks Meat Processing." The building and equipment were paid for with a $25,000 loan from First Federal Bank of Enterprise with monthly payments of $266.67.
At the time construction started on the meat processing building, Mr. Weeks quit his job at Fort Rucker, and he and his wife devoted full time to the construction of the building and the operation of the business. The testimony is to the effect that Mrs. Weeks worked full time at the plant, did just about everything that needed to be done in the business, for which she received no regular compensation.
The meat processing business was operated by Weeks from August 1975 until October 10, 1977, the day prior to their separation. It was on this day, i.e. October 10, 1977, that the Weeks executed a lease with option to purchase on the business. The sum of $5,000 was paid to the Weeks on the day the lease was executed and the lessees agreed to pay $350 per month for five years. The $5,000 check was deposited in the parties' business account. There was an additional $1,100 in this account at the time of the $5,000 deposit. Mrs. Weeks testified that she did not obtain any money from this account after the separation, but she knows the bank account was overdrawn a short while later as a result of checks being written on it by Mr. Weeks.
On the day prior to the separation Mrs. Weeks received $50 from a checking account in the Citizens Bank of Enterprise and Mr. Weeks transferred title to a 1971 Oldsmobile to her. At the time of the marriage she owned a 1965 Chevrolet Caprice, *Page 850 
and it was sold and the proceeds placed in the joint checking account. After the marriage Mr. Weeks purchased a car and a truck and paid for them out of the joint checking account.
At the time of trial the parties' jointly owned properties were covered by a $25,000 mortgage. Mrs. Weeks was unemployed and had no special qualifications for employment. She had been a housewife most of her life. She had been receiving, however, the $350 payments on the lease but had been making the mortgage payments of $266.67 per month.
Mr. Weeks was employed and earning approximately $160 per week take-home pay.
During the trial the mobile home was valued from about $15,000 to less than $10,000. The testimony also disclosed that it was in need of extensive repairs.
The husband's principal argument on appeal is that the alimony in gross award is excessive and should be set aside.
It is well settled in this state that when a trial court hears evidence ore tenus in a divorce case, its judgment will be presumed correct unless it be shown that such judgment is plainly and palpably wrong. Free v. Free, 52 Ala. App. 647,296 So.2d 735 (1974).
Furthermore, the trial court has wide discretion in making a property division and in awarding alimony in gross. Hawkins v.Hawkins, Ala.Civ.App., 346 So.2d 967 (1977). The division of property does not call for an equal division but one graduated according to the equities of the case. Cobb v. Cobb, Ala.Civ.App., 352 So.2d 1384 (1977). Likewise, an alimony in gross award compensates a wife for the loss of her inchoate marital rights and gives to her the present value of her future support had she remained married. Hager v. Hager, 293 Ala. 47,299 So.2d 743 (1974); Smith v. Rogers, 215 Ala. 581,112 So. 190 (1927).
In the case at bar the evidence shows that the money used to purchase the mobile home owned jointly by the parties came from funds belonging to the wife and that the wife placed in the parties' joint checking account approximately $7,500 of her personal funds, and it was from this account that the money came to purchase the lot upon which the meat processing building was constructed.
We perceive no error in that part of the trial court's judgment giving the wife title to the mobile home nor in giving her title to the property and assets of the meat processing business subject to her satisfying the $20,000 mortgage outstanding on these properties. In effect she was merely receiving that which was hers. See Godec v. Godec, Ala.Civ.App., 346 So.2d 459 (1977). In other words, her personal funds had been used to purchase the mobile home and the real estate upon which the mobile home and the meat processing building were located.
Neither do we perceive reversible error in the court's award of the household furnishings and cash to the wife.
At the time of trial the evidence shows that the husband was employed and owned one hundred sixty acres of land valued at not less than $250-$300 per acre, subject only to a life estate of his aged mother; whereas the wife was unemployed, with no readily available marketable skills, and a mortgage indebtedness of about $20,000 which was one month in default. In consideration of the contributions made to the marriage and what she received from it after it was terminated, we cannot say that the trial court plainly erred in its award of alimony in gross.
The husband also argues that the alimony award is unconstitutional in view of the United States Supreme Court's decision in Orr v. Orr, 440 U.S. 268, 99 S.Ct. 1102,59 L.Ed.2d 306 (1979). It is to be noted, however, that the husband did not challenge the constitutionality of the alimony statutes in the trial court, but raised this issue for the first time on appeal. We have held that the presentation of such an issue for the first time on appeal is too late. Howard v. Pike, 290 Ala. 213, 275 So.2d 645 (1973). *Page 851 
For the information of the parties, this court on May 30, 1979 in Orr v. Orr, 374 So.2d 895 (Ala.Civ.App.), extended the benefits of the alimony statutes to men as well as women, thereby satisfying the equal protection argument which was the basis for the United States Supreme Court's decision.
The judgment of the trial court is affirmed.
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur.